**SO ORDERED.**

**SIGNED April 27, 2007.**



_____
**HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE**

_____

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE:      MARGARET PERKINS HUDNALL         (Debtor) | CASE NO. 05-82837 |
| THOMAS R. WILLSON, TRUSTEE         (Plaintiff) | |
| VERSUS | ADVERSARY NO.: 06-8043 |
| MARGARET PERKINS HUDNALL         (Defendant) | |

# REASONS FOR DECISION

This matter comes before the Court on an Objection to the Discharge. This is a Core Proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and by virtue of the reference from the District Court pursuant to Uniform Local District Court Rule 83.4.11, incorporated into Local Bankruptcy Rule 9029.3. No party at interest has sought to withdraw the reference to the bankruptcy court, nor has the District Court done so on its own motion. This Court makes the following findings of fact and conclusions of law in accordance

with Federal Rule of Bankruptcy Procedure 7052. Pursuant to these reasons, there will be judgment in favor of the plaintiff denying the debtor's discharge.

**FINDINGS OF FACT**

James Kenneth Hudnall, his former spouse, Margaret Perkins Hudnall, Marco Development, LLC and Kenco, LLC, filed voluntary petitions for relief under Chapter 11 on October 16, 2005. The debtors were engaged in various business operations in Natchitoches Parish. Marco owned real estate including the former Nakatosh Hotel, which was under restoration at the time of filing. The cases were originally consolidated. Margaret Perkins Hudnall was an owner and officer of both Marco and Kenco. Orders to the Debtor-in-Possession were entered in each case, which required, inter alia, that the debtors close all bank accounts and open new accounts as debtors-in-possession. Debtors were also required to file monthly operating reports.

The §341 meetings in the Marco, Kenco, and individual Hudnall Chapter 11 cases were held on December 14, 2005. The §341 meeting in the converted individual case was held on September 5, 2006. Most of the testimony on which the plaintiff relies in prosecuting this Motion was obtained at those §341 meetings, and transcripts were offered and introduced into evidence at the hearing on the motions. At the first round of §341 meetings, Mr. and Ms. Hudnall were questioned about a transaction that occurred during the preceding week, when Ms. Hudnall took a check to a Natchitoches Bank for an amount exceeding $100,000.00, payable to Marco and Mr. and Ms. Hudnall. According to the testimony, Marco held a second mortgage on a home originally owned by one Jim Haley that had been sold to a minister. The attorneys who performed the closing transaction were not listed in the bankruptcy schedules and were never authorized by the court, although fees were paid to both from the proceeds. As of the date of the §341 meeting, although

2

debtor-in-possession accounts had been opened for each debtor, none of the accounts had been used.

The check from the closing was payable to Marco and Mr. and Ms. Hudnall. Mr. Hudnall testified that he was retaining $51,000.00 in a non-debtor-in-possession account (for Kenco) awaiting transfer. Ms. Hudnall testified that she took the funds from the closing attorney directly to a bank and obtained a cashiers' check, rationalizing that both she and Mr. Hudnall had put personal funds into Marco's operations and Marco had a second lien on the house. The funds she received were not deposited into the debtor-in-possession account. That $51,000.00 was deposited into her daughter's bank account to pay for a piece of equipment to be used in a new business.

Before the bankruptcies were filed, Ms. Hudnall and their daughter, Vanessa Woodle, formed a company called Alexandria Prenatal Peek, LLC. The main piece of equipment for this business, a 3-D and 4-D ultrasound machine, was to be purchased and financed by a bank. At the time she obtained the cashier's check for the $51,000.00, Ms. Hudnall discussed with a bank representative a possible loan to her daughter to be secured by a certificate of deposit on the same funds. However, when the financing arrangements did not materialize, Mr. Hudnall instructed Ms. Hudnall to just pay for the equipment. Ms. Hudnall acknowledged that the funds were property of either the Marco or her personal bankruptcy estate. Ms. Hudnall pledged to attempt to recover the funds from her daughter.

Ms. Hudnall testified that her daughter and son-in-law paid her expenses both prior to and after the filing of the bankruptcy, but that funds given to her for expenses following the filing had been deposited into her personal account at Southern Heritage Bank, notwithstanding the fact that she had a debtor-in-possession account at the same institution. She also testified that she had relinquished all of her interests in Alexandria Prenatal Peek, LLC to her daughter, and that the

3

ultrasound equipment to be used in the business was purchased in August for approximately $52,000.00.

After the revelations at the §341 meetings in the corporate and individual cases, the efforts of all the Chapter 11 debtors-in-possession continued, but a financial advisor to the corporate debtors withdrew. (Marco, Motion and Order to Withdraw as Financial Advisor by John DeSoto, Doc. nos. 83, 88) Counsel for Debtors also withdrew. (Marco, Motion and Order to Withdraw Counsel, Doc. nos. 82,89) Ultimately, a Trustee was appointed in the Marco and Kenco cases, and the individual cases of Mr. and Ms. Hudnall were converted to Chapter 7.[1]

The §341 meetings of the Hudnall debtors in their respective cases were conducted, the post-petition financial transactions previously discussed at the earlier meetings were revisited, and the testimony of both Mr. and Ms. Hudnall revealed more omissions from the schedules. Ms. Hudnall testified that she owned a 2005 Ford Expedition mortgaged to Peoples State Bank which was not listed in her schedules. Ms. Hudnall admitted she had not listed an interest in a number of partnerships and corporations shown on the records of the Office of the Secretary of State of Louisiana. Neither the formation of Alexandria Prenatal Peek, LLC, nor the transfer of her interest in same disclosed in the schedules. Shortly after the formation of that company, Ms. Hudnall transferred her interest to Vanessa Woodle. The records of the Secretary of State of Louisiana also reveal Margaret Hudnall is the Secretary-Treasurer and Agent for Service of Rural Utilities Inc.; Manager of C& L. Realty, LLC, "A Real Estate Company," Registered Agent and Manager of Alexandria Prenatal Peek, LLC, Director of Tidwell Landing Cemetery Fund, Inc., registered agent

---

[1] After the appointment of a Chapter 11 Trustee in the Kenco case, it was converted to a Chapter 7. A creditor, Delta Bank, filed a plan in the Marco case, which was confirmed.

and Secretary-Treasurer of Ken & Ken, Inc., in addition to her being shown as a Manager of Marco and Kenco.[2]

At no time has debtor amended her schedules to list the interests in these entities, nor has she amended the same to list her daughter, son-in-law, or the interest in the mortgage that resulted in the post-petition payments that were deposited into her daughter's account.

## APPLICABLE LAW AND DISCUSSION

The trustee, as plaintiff, asserts that the discharge of the debtor should be denied under 11 USC §727 (a)(2), (a)(3), (a)(4), (a)(6) and (a)(7). It is well settled that the burden of proof in dischargeability actions and on objections to the discharge is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 660, (1991). Because the motion before the Court does not implicate §727(a)(6), that section will not be discussed.

**Section 727(a)(7)**

Section727(a)(7) permits the discharge to be denied where the debtor committed any act specified in §§(2),(3),(4),(5) or (6) on or within one year before the date of the filing of the petition or during the case, in connection with another case concerning an insider. Ms. Hudnall was an owner and officer of both Marco and Kenco, thus she was an insider as defined in 11 USC §101(31).

**§727(a)(2)**

Under §727(a)(2) the discharge shall be denied where the debtor, with intent to delay, hinder or defraud a creditor, allows the transfer, removal, destruction, mutilation or concealment of (a) property of the debtor (within one year prior to the filing) or (b) of the estate (after the date of filing

---

[2]The Secretary of State's records reflect that an affidavit to dissolve Ken & Ken, Inc., was filed January 11, 1994.

5

of the petition). Fraudulent intent may be inferred from the actions of the debtor and proven by circumstantial evidence. *In re Chastant*, 873 F.2d 89, 90 (5th Cir.1989). There is a presumption of fraudulent intent when a transfer is made to a relative. *In re Butler*, 38 B.R. 884, 888 (Bankr.D.Kan. 1984). Once the presumption arises, the burden shifts to the debtor to prove the lack of fraudulent intent. *Cadle Company v. Pratt*, 411 F.3d 561 (5th Cir. 06/03/05).

On this point, the plaintiff's case is clear: In depositing the post-petition obtained $51,000.00 in her daughter's account, Ms. Hudnall admits transferring a substantial amount of property of either her individual case estate or that of Marco, since it seems both estates had an interest in the funds, to a relative. It seems that the deposit was made even after her attempt to use the funds as collateral to secure the loan on the ultrasound machine. As discussed further herein, her explanation for this act distills to an "ignorance of the law" defense, which the Court rejects entirely, based on the fact that Ms. Hudnall was a Chapter 11 debtor-in-possession, having the benefit not only of legal counsel at the time, but also of having received the Chapter 11 Order to the debtor-in-possession prohibiting such a transfer. On this ground alone, the Court finds sufficient basis to deny the discharge, however as discussed herein, more reasons abound.

**Section 727(a)(3)**

Section 727(a)(3) relates to the concealment, destruction, mutilation or falsification of records or the failure to keep records from which the debtor's financial condition might be ascertained, unless such act or failure to act was justified under the circumstances. This section is intended "to give the trustee, creditors, and the court complete and accurate information concerning the status of the debtor's affairs and financial history, and to test the completeness of the disclosure requirements to a discharge." *In re Pulos*, 168 B.R. 682, 690 (Bankr. D. Minn. 1994). Once the

6

plaintiff has established the inadequacy of the debtors' records, the burden shifts to the debtor to prove that the failure to keep same is justified under the circumstances, and when same is lacking, debtor does not receive a discharge. *Id.* Factors in determining the adequacy of the debtors' records include the "education, sophistication and business experience, size and complexity of debtor's business, debtor's personal financial structure, and any special circumstances that may exist." *Id.,* at 692. More sophisticated business persons are held to a higher level of accountability. *Id*., citing *Meridian Bank v. Alten*, 958 F.2d 1226 (3rd Cir. 1992).

While the main thrust of the trustee's complaint and the motion for summary judgment is the false oaths, the complaint also notes that the debtors failed to keep financial records. At the §341 meeting in December, 2005, Mr. John DeSoto, financial advisor to Kenco and Marco, testified that there were no financial records in the corporate cases from January 1, 2005, to the date of the meeting. This fact was confirmed by both Mr. and Ms. Hudnall. His explanation for this was that they had no business, although Ms. Hudnall testified they did have bank statements. (Tr., Kenco, pp.27-29.) According to their testimony, Kenco was engaged in the construction business and Marco in the ownership of real estate, including the Nakatosh Hotel, which was undergoing restoration by Kenco as of the date of the meeting.

At oral argument, debtor's counsel opined that the failure to list her interest in Marco and Kenco should not be construed against her, inasmuch as they were debtors in companion cases. This court attaches no particular significance to the failure to list the entities which filed companion cases or the interest in Ken & Ken, Inc., which was dissolved in 1994, or to C& L Realty, owned by her husband's second wife. We cannot overlook, however, the omission of Rural Utilities, Inc., with respect to which her affidavit opines that the omission was an oversight. That company's assets

7

consist of two oxidation ponds and sewer lines in Concordia and LaSalle Parishes which have no value. Lack of value is not a defense. Moreover, debtor states that in the years prior to filing bankruptcy, she tried to donate the small sewer systems to the parish sewage systems to relieve herself of the liability. Thus has the debtor confessed to an omission of both assets and a liability.

**Section 727(a)(4)**

Section 727(a)(4) permits the discharge to be denied for false oaths. The test for an objection for false oaths under §727(a)(4) was set forth by the Fifth Circuit in *In the Matter of Beaubouef,* where the Court observed:

> The plaintiffs [have] the burden of proving that: (1) [Debtor] made a statement under oath; (2) the statement was false; (3) [Debtor] knew the statement was false; (4) [Debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *See e.g.*, *In re Sapru*, 127 B.R. 306, 314 (Bankr.E.D.N.Y. 1991). The elements of an objection to discharge under §727(a)(4)(A) must be proved by a preponderance of the evidence. See *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991). False oaths sufficient to justify the denial of discharge include "(1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at the examination during the course of the proceedings." 4 Collier on Bankruptcy ¶727.04[1], at 727-59 (15th ed. 1992).

*In the Matter of Beaubouef,* 966 F. 2d 174, 178 (5th Cir. 1992).

A debtor may not excuse the failure to list an asset on the basis that the asset is worthless. It makes no difference that there is no intent to injure creditors when debtor makes a false statement, since creditors are entitled to judge for themselves what information will benefit or prejudice them. *Id.* The administration of the bankruptcy system is dependent upon the veracity of the debtor's statements. *Id.* In *Beaubouef*, the debtor amended his schedules six months after a 2004 examination, but still failed to list a company in which he had an interest. While the Fifth Circuit noted that it could not deny the discharge for honest mistakes, it concluded there was sufficient

8

evidence of the debtor's reckless indifference to the truth based on the number of falsehoods and the failure to clear up the errors in amended schedules.

Even an amendment to the schedules to correct the omissions may not absolve the debtor. In *Beaubouef*, the debtor had amended the schedules, but failed to clear up all the inconsistencies and omissions. The bankruptcy court determined that this constituted reckless indifference to the truth and established the requisite intent to deceive. The Fifth Circuit affirmed:

> "Full disclosure of assets and liabilities in the schedules required to be filed by one seeking relief under Chapter 7 is essential, because the schedules serve the important purpose of insuring that adequate information is available for the trustee and creditors without need for investigation to determine whether the information provided is true."

*Beaubouef*, 966 F.2d at 178 (citation omitted).

Not every omission results in a judgment for the objecting party. The omission must be material. *In re Pratt*, 411 F.3d 561 (5th Cir. 6/3/2005). A failure to list an interest in a bank account to which a debtor had access or one belonging to a spouse in which the debtor made deposits more than one year prior to the trial was held not to be material. Also, the debtor had not disclosed that he was the beneficiary of a spendthrift trust and that he retained interest in a partnership. *Id*. There, the bankruptcy court concluded that the creditor had failed to meet its burden of proof and the Fifth Circuit held that the findings were not clearly erroneous. Similarly, where a debtor had in fact listed ownership in various assets and had assisted the trustee in the surrender of same, the court held that the objecting party had failed to meet the burden of proof. *In re Lee*, 309 B.R. 468 (Bankr.W.D.TX 2004).

The trustee's statement of uncontested facts focuses upon the history of the cases and Ms. Hudnall's role as an insider of Marco and Kenco. (Doc. no.20.) The statement then asserts that the

9

debtor received funds and assets as debtor-in-possession for a debt owed to herself, Marco or Kenco, but transferred the same to her daughter or to an entity in which the daughter and the debtor owned an interest, and that the debtor transferred an interest in an entity, namely Alexandria Prenatal Peek, LLC, to her daughter. Debtor further failed to file monthly operating reports in contravention of the court's order, failed to disclose assets in the schedules, and failed to provide financial records.

In opposition, debtor's counter-statement, and an accompanying affidavit, while expressly conceding the omissions and actions, seeks to generally justify same under the well-worn cloak of ignorance of the law. As to the Marco mortgage (which gave rise to the ill-handled post-petition funds), she asserts that she had "written off" the matter, due to her belief no funds would be received. Debtor also asserts that she fell on "hard times" in the year and one half preceding filing. During that period, she was supported by her daughter and son-in-law, to whom she then felt indebted. The transfer of the debtor's interest in Alexandria Prenatal Peek, LLC was done at a time when that business had no value, and without the foreknowledge that the previously unrelated mortgage investment would give rise to the funds that debtor transferred to her daughter or her business. Debtor claims ignorance of the bankruptcy laws and procedures, insists she tried to have the funds returned, acknowledges her failure to amend the schedules, attributing the same to the fact that she was without counsel for a period of time, and did not understand her duties and responsibilities as a debtor-in-possession even when she had counsel.[3] As to the omissions of the various business entities, debtor offers various explanations of the failure to list, ranging from total

---

[3] Debtor's counsel acknowledged at oral argument that his client does not claim that the transfers or omissions resulted from reliance on advice of counsel. Even where that defense is raised, however, it is not generally successful on the omissions issue, where it is plainly apparent the assets should have been listed. Only where the reliance is reasonable and in good faith may the defense succeed. *In re Dreyer*, 127 B.R. 587 (Bankr.N.D.TX 1991)

non-involvement to oversight.

The transcripts of the §341 meetings all related cases of Ms. Hudnall, Marco and Kenco demonstrate an appalling lack of candor toward the trustee and the creditors. Her testimony is replete with incomplete and inadequate responses. The omission of the interest in the mortgage which resulted in the post-petition closing from which both she and her husband obtained over $100,000.00, and her subsequent transfer of one-half of the proceeds to her daughter and an entity in which she transferred an ownership interest in satisfaction of what she perceived to be a debt (unscheduled) cannot under any state of facts be condoned by this court. The self-serving statements by Ms. Hudnall in seeking to justify these transactions, saying she fell on "hard times," forgot about the mortgage, and generally rely upon the "ignorance of the [bankruptcy] laws" as a defense can produce no other response than incredulity. Her half-hearted efforts to induce her daughter to return the funds coupled with the complete failure to file the monthly operating reports and amend the schedules and statements to correct these omissions clearly indicate that the debtor was acting with reckless indifference to the truth. These actions standing alone are sufficient to deny the discharge under §727(a)(4).

Ms. Hudnall's attempts to shift the blame to the fact she was without an attorney from December 2005 to October 2006 does not stand scrutiny. As noted, it is not her position that she relied on advice of counsel in these omissions. It is rather the lack of counsel for an extended period on which she relies. A similar result obtains with regard to the failure to disclose an interest in various business entities, putting aside the blatant omission of an interest in Alexandria Prenatal Peek, LLC. As noted previously, Ms. Hudnall's explanations for those omissions range from being totally uninvolved to oversight.

11

Ms. Hudnall assisted in the bookkeeping for these businesses, a fact that she confirmed at the §341 meeting in her Chapter 7 case on September 5, 2006. She testified that a CPA "finalized" all of the bookkeeping records. She promised to produce personal tax returns and bank statements for 2005 and 2006 at that meeting, but indicates that she had not filed a tax return for 2004. (Tr. Hudnall, page 14.)

The self-serving statements and affidavit in opposition to the motion for summary judgment simply do not avail Ms. Hudnall. This Court has not found a Fifth Circuit case where a motion for summary judgment was in fact timely controverted. In *Sholdra*, the debtor argued on appeal that the amended statements and schedules, which had not been disclosed by the appellee on appeal, created a genuine issue of material fact. *In re Scholdra*, 249 F.3d 380 (5th Cir. 4/23/2001). The Fifth Circuit rejected this argument, noting that, although it might have been better practice to disclose the amendments on appeal, the amendments themselves were filed solely after the falsehoods were discovered. Thus, the amendments did not negate the fact that the debtor made knowingly false oaths in the original schedules and statement of affairs. The Fifth Circuit then notes that it need not and did not decide whether such amendments would ever preclude denial of the discharge on summary judgment. *Id.*

**Denial of Discharge on Motion for Summary Judgment**

This matter arises on Motion for Summary Judgment. Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7056, provides in pertinent part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Although summary judgment is a useful

12

device, it must be used cautiously or it may lead to drastic and lethal results. *Murrell v. Bennett*, 615 F.2d 306 (5th Cir. 1980). In ruling on a motion for summary judgment, the evidence should be considered in the light most favorable to the non-movant. *Trevino v. Celanese Corp.*, 701 F. 2d 397 (5th Cir. 1983). However, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).

Another court has dealt with revocation of a discharge on a controverted motion for summary judgment. *In re Rivera*, 338 B.R. 318 (Bankr. N.D.Ohio 2/3/2006). There, debtor had a pre-petition personal injury claim against the Catholic Diocese of Cleveland, which was scheduled with a value of "unknown." At the §341 meeting, the debtor acknowledged the claim belonged to the trustee. The claim was settled post-petition for $175,000.00, without the trustee's knowledge. Contacts with debtor's attorney in the personal injury action resulted in conflicting versions of the amounts the debtor had actually received. Ultimately, the trustee sued to revoke the discharge on the basis that the debtor received $95,000.00, as opposed to $15,000.00, having disclosed only the latter figure, and failed to turn over the remainder to the trustee. The trustee also argued that the debtor failed to appear for a 2004 examination, debtor maintained his absence was justifiable.

Although the Court declined to revoke the discharge on the ground that it was obtained by fraud, it next considered whether the discharge should be revoked and denied pursuant to §727(a)(2) and (d)(2), for the failure to report that an additional $80,000.00 in proceeds had been recovered by the plaintiff/debtor but not turned over to the trustee. The parties did not dispute that the funds were property of the estate. Although the debtor acknowledged that he had testified at the §341 meeting that the property belonged to the estate, he maintained that he relied on advice of his personal injury

13

counsel as to the disposition of the amount.[4] The court determined that the debtor could not rely solely on the advice of one attorney and not the other. The debtor filed an affidavit in opposition to the motion for summary judgment, which contradicted his earlier testimony at the §341 meeting, maintaining that he believed in good faith he could spend the money. [5]

The court reviewed a number of cases holding that a party cannot create a genuine issue of fact in opposition to a motion for summary judgment that contradicts earlier testimony without explaining the contradiction or attempting to resolve the disparity. The Court cited a number of cases concerning self-serving affidavits, concluding that the debtor had not provided any evidence from which it might reasonably infer that he did not know that the settlement proceeds were property of the estate, or that they were to be turned over to the trustee. Thus, the Court revoked the debtor's discharge pursuant to §727(d)(2). It also denied the discharge for failure to turn over the property under §727(a)(2)(B) in view of the debtor's admission that he spent the settlement proceeds and therefore transferred estate property. The court observed:

> Therefore, the Trustee has met his burden of showing that there exists no genuine issue of material fact on this issue. Although summary judgment is generally inappropriate when intent is an issue, summary judgment may be granted where all reasonable inferences defeat the claims of one side. *See Hoover v. Radabaugh,* 307 F.3d 460, 467 (6th Cir. 2002) ("When the defendants' intent is at issue, summary

---

[4]In a series of e-mails, the debtor sent an e-mail to his personal injury attorney stating that his bankruptcy attorney had informed him the full amount of the claim belonged to the trustee. The personal injury attorney responded that the debtor should not be afraid and that the bankruptcy lawyer was an idiot. *Rivera*, 338 B.R. 318, at 326.

[5]The court cited *Joostberns v. United Parcel Services, Inc.*, 2006 WL 41189, *7 (6th Cir. 2006) (*citing Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 459-460 (6th Cir.1985)) ("a non-moving party should not be able to create non-existent issues of fact by filing affidavits after the opposing party files for summary judgment.) That is precisely what occurred here. The motion was originally set for a hearing on February 28, 2007. The debtor sought and obtained a continuance for the purpose of filing a response. (Doc. nos. 29,30). The opposing statement of fact and affidavit were filed on April 12, 2007, five days prior to the continued hearing date of April 19, 2007.

> judgment is particularly inappropriate."); *In re Davison*, 2004 WL 2852352, *4 (10th Cir. BAP 2004) ("Although the Debtors are correct that summary judgment is inappropriate when a choice must be made between two competing inferences, the Debtors did not show that there was any other inference to be drawn from the facts in evidence."); *In re Gertsch*, 237 B.R. 160, 165 (9th Cir. BAP 1999)(citations omitted)("Where intent is at issue, summary judgment is seldom granted, however, summary judgment is appropriate if all reasonable inferences defeat the claims of one side, even when intent is at issue."); *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990)("Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.").

*Rivera*, 338 B.R. at 327.

Such is the case here, where summary judgment is appropriate, as all reasonable inferences of the facts summarized herein defeat the claims of Ms. Hudnall. This Court cannot permit the debtor to avoid the consequences of her actions and inactions on the pretext that her ignorance of the law excuses her from her duties. This individual debtor stood in the position of a fiduciary to two corporations in which she was an officer. The funds that she received post-petition and turned over to a relative constituted property of either her estate or property of the Marco estate. This Court can perceive of no state of facts that might excuse this debtor's conduct. Neither Vanessa Woodle or Prenatal Peek are listed is the schedules as a creditor of any of the related debtors, nor is the mortgage debt/claim which was the source of the funds. The debtor failed to deposit the funds into the estate account and instead transferred the funds directly to her daughter or an entity controlled by her daughter in which the debtor transferred her own interest pre-petition without disclosing same. Similarly, debtor failed to list her interests in various enterprises. At no time did debtor ever avail herself of the opportunity to amend the statements and schedules, making no effort to correct the record from the date of filing of the bankruptcy cases in October, 2005 to April 12, 2007, when she belatedly and unsubstantially opposed the motion for summary judgment. Thus, this Court

15

concludes that the debtor's discharge should be denied under §727(a)(2), (3), (4), and (7).

## CONCLUSION

From the forgoing reasons, this Court finds and concludes that there be judgment in favor of the Plaintiff, sustaining the objection to the Discharge of the Debtor under §727(a)(2), (3), (4), and (7).   A separate and conforming Order shall enter.

# # #